**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Belinda G. McKay, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 9:09-141-PMD |
| v. | ) | |
| | ) | |
| Michael J. Ashtrue, Commissioner of | ) | **ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Titles II and XVI of the Social Security Act, Plaintiff Belinda G. McKay ("Claimant") applied for disability and disability insurance benefits in November 29, 2004, and later for supplemental security income, alleging disability as of July 12, 2004 due to a history of brain injury, diabetes, visual deficits, back pain, carpal tunnel syndrome, obesity, depression, memory problems, and auditory hallucinations. *See* 42 U.S.C. §§ 416(i), 423, 1381a. She was 46 years old when she alleges she became disabled. Claimant's claims were denied initially and upon reconsideration. She then requested a hearing before an administrative law judge ("ALJ"), after which the ALJ also denied Plaintiff's claim. The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Claimant, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), now seeks judicial review of the Commissioner's final decision to deny her claims. The record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), recommending this court to affirm the Commissioner's decision.

## STANDARDS OF REVIEW

### A. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

### B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although this court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

## **ANALYSIS OF CLAIMANT'S OBJECTIONS**

After conducting a hearing and reviewing Claimant's medical documentation, the ALJ determined that, although Claimant does suffer from severe impairments of an adjustment disorder, borderline personality disorder, borderline intellectual function, and lower extremity edema, and is unable to perform her past relevant work as a cashier, a cook, and a secretary, she nevertheless retains the residual functional capacity to perform a limited range of light work activity. Therefore, the ALJ determined that Claimant was not disabled. In her action in this court, Claimant contends the ALJ erred by failing to find that her visual impairment was severe, by failing to adequately define Claimant's "sit-stand restriction," by improperly deleting the requirement that Plaintiff would have to elevate her legs from the hypothetical given to the vocational expert, and by failing to correctly assess Plaintiff's credibility and subjective allegations of pain. The Magistrate Judge rejected Claimant's arguments and recommends that the court uphold the ALJ's determination. Claimant objects to this recommendation, specifically with respect to the ALJ's determination that her visual impairment is not severe.[1]

---

[1] Claimant generally objects to the remainder of the Magistrate Judge's findings by asserting that "a sit-stand option must be specified as described in the initial brief, and that evidence did support the medical opinion that the Plaintiff needed to elevate her legs." (Obj. at 4.) Since Plaintiff makes a very general objection to the Magistrate Judge's recommendation on these matters, the court does not conduct a separate analysis of them. It only notes that it has reviewed the R&R and adopts the recommendations contained therein. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Claimant claims to have suffered a bilateral right hemianopsia as a result of a severe car accident in 1986, that left her in a comatose state for approximately eight weeks. She believes her visual impairment should be deemed a "severe" impairment, and she believes a medical examination performed by Dr. John Jordan on March 2, 2005 supports such a finding. Dr. Jordan made the following findings regarding Claimant's vision:

> Visual acuity 20/50 right eye, 20/40 left eye and 20/50 both eyes using corrective lenses. The cranium was normocephalic with no mass or tenderness. The TMs were clear and intact bilaterally. Pupils were reactive to light and accommodation and the extraocular muscles were all intact. Visual fields were tested by confrontation and revealed a classic right bilateral hemianopsia. The fields on both eyes stopped at the midline bilaterally. The fields were consistent both superiorly and inferiorly in both eyes. No other testing techniques were available, as requested such as the Goldmann or the Humphry test.

(R. 387.) Dr. Jordan's report also includes a hand drawn visual of Claimant's eyes, which indicates that Claimant could not see out of the right-half of her visual field in both eyes. In the summary of his report, Dr. Jordan states that Claimant's visual field shows the classic bilateral right hemianopsia, but was tested by confrontation only.[2] (R. 388.) Contrary to Dr. Johnson's diagnosis, an ophthalmologist examined Claimant about two months later in May of 2005 and concluded that she did not suffer from bilateral hemianopsia and that her visual field was normal, despite an efficiency score of 75% in her left eye and 54% in her right eye. Based on these evaluations, the ALJ found that Claimant's visual impairments only minimally affect her ability to perform work-related activities. In making this finding, the ALJ specifically stated:

> Although the claimant reported a vision problem and the record reveals evidence of

---

[2]In her brief, Claimant explains that a confrontation visual field exam asks the patient to cover one eye while the examiner moves his hand out of the patient's visual field and then brings it back into the field. The patient informs the examiner when his hand comes back into her view.

4

> bilateral right hemianopsia secondary to a brain injury, eye examination by Dr. John Jordan in March 2005 revealed visual acuity of 20/50 in the right eye and 20/40 in the left eye. (Exhibit F1/226–229) Moreover, ophthalmologic examination in May 2005 revealed no evidence of hemianopsia and the claimant's best corrected visual acuity was 20/20 on the right and 20/30 on the left. (Exhibit F1/210–213) Lastly, it is significant to note that in January 2005 the claimant reported that she had no problem with her eyes, indicating that she had passed the DMV eyesight test. (Exhibit F1/223)

(R. 6.) After reviewing the record, the Magistrate Judge determined that substantial evidence existed to support the ALJ's determination. In addition to citing the medical evaluations referenced by the ALJ, the Magistrate Judge also discussed a March 22, 2005 psychological evaluation conducted by clinical psychologist Dr. Jonathan Simons, in which Claimant reported watching television and playing cards with a friend on occasion. The Magistrate Judge found it more important that Claimant, in that evaluation, did not indicate her vision impairment was a reason that she could not work, and Dr. Simons noted that Claimant had a good work history for many years following her motor vehicle accident, so the accident seemed irrelevant to her current problems. (R. 378.)

In her objections, Claimant contends the court cannot make a determination as to whether or not substantial evidence exists to support the ALJ's determination that her visual field impairment is not severe because the ALJ failed to discuss the several parts of the record which support her belief that her visual impairment is severe, including the SSA Kinetic Test results and the opinions of two state agency physicians. Therefore, Claimant asks the court to remand this matter to the ALJ for further consideration because she does not believe the ALJ adequately considered the evidence of her visual impairment.[3] In regard to her visual field, Claimant points to the Magistrate Judge's recognition that a confrontation test performed by Dr. Johnson revealed she suffered from bilateral

---

[3] In making this request, Claimant also contends that the ALJ's and Magistrate Judge's discussion of visual acuity is irrelevant to her complaint that her impaired visual field is what should be considered a severe impairment.

5

right hemianopsia. She also highlights the results of the ophthalmologist's SSA Kinetic Test, which revealed she has a 75% efficiency of field of vision in her left eye and 54% efficiency in her right eye. Lastly, Claimant directs the court's attention to the opinions of two state agency physicians, which indicated that Plaintiff had a limited field of vision that restricted Claimant from any work requiring normal field of vision. (R. 346.)

She contends that the loss of half of her visual fields at the midline in both eyes represents a very significant visual limitation on her ability to work and should easily qualify as a severe impairment.[4] In support of her argument, Claimant cites Social Security Ruling 83-14, which states:

> Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others—usually a constriction of visual fields rather than a loss of acuity—the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).

This Ruling causes Claimant to believe the ALJ should have found her unable to perform light work activity, which would have only left her with sedentary work to perform. The problem with this argument is that Claimant has not provided the court with any evidence that shows she has had difficulty maneuvering on a daily basis without harming herself or others, including tripping over things while walking or failing to detect approaching persons or objects, as addressed by Ruling 83-14. In fact, as the Magistrate Judge noted, the medical record demonstrates that Claimant has been able to maintain a good work history for many years after her 1986 accident which led to her visual impairments, (R. 378), and Claimant has not only taken care of herself, but also a handicapped child

---

[4]An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a).

6

and her disabled boyfriend. (R. 241.) Moreover, even if Claimant had provided manifestations of her visual impairment, Ruling 83-14 states that her ability to perform light work would only be significantly diminished rather than rendered obsolete. Accordingly, the ALJ would not have had to necessarily find that Claimant could only perform sedentary work as Claimant suggests. Therefore, the court does not read Ruling 83-14 to contradict the ALJ's determination.

While the ALJ failed to explain how the results of Claimant's SSA Kinetic Test, which revealed she has a 75% efficiency of field of vision in her left eye and 54% efficiency in her right eye, factored into his decision, the court does not believe that omission warrants a remand in this case. Although Claimant raises a credible point, the ALJ did review the ophthalmologist's report; he simply chose to rely on the ophthalmologist's ultimate conclusion—that the examination "revealed no evidence of hemianopsia "—rather than discuss the examination's particulars. (R. 6.) Also, the ALJ relied on the fact that Claimant, herself, stated she did not have any problems with her eyes in January 2005. (*Id.*) Therefore, the court finds that substantial evidence supports the ALJ's determination that Claimant's visual impairment is not severe. Lastly, as noted by the Magistrate Judge, the state agency physicians concluded that Claimant only needed to be restricted from work requiring normal field of vision, and in her objections, Claimant does not contest the fact that none of the jobs identified by the vocational expert require a normal field of vision to be performed. Based on a review of the record, the court finds that substantial evidence supports the ALJ's determination that Claimant's visual impairments are not severe.

## **CONCLUSION**

The court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Even when a claimant can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. After a careful examination of the record as a whole, the court concludes that the ALJ's decision to deny disability insurance benefits was based on correct legal principles and was supported by substantial evidence. It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **AFFIRMED.**

    **IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, SC**
**February 22, 2010**